WILLIAM PENDERGAST & another *vs.* COMMERCIAL MUTUAL MARINE INSURANCE COMPANY & others.

The members of a mutual marine insurance company, incorporated and doing business in Boston before the passage of *St.* 1851, *c.* 281, signed an agreement " to pay the said company on demand the sums set opposite their respective names, or such parts thereof as may from time to time be called in for the use of the said company, the same to be payable either in money or promissory notes." The objects of the agreement were stated in it thus: " Whereas for the purpose of enabling the corporation to increase its business, and in order to give greater security to the holders of its policies, the directors have considered it expedient to obtain a subscription of not less than two hundred thousand dollars, to be paid in stock notes in advance of premiums, payable in twelve months from their date, and in such sums and at such times as may be decided

upon by the directors. It is not proposed to make any assessment on this subscription at this time, nor unless the business of the office should require it, but retain it as a guaranty fund, on which, with its other assets, insurance could be based. It is proposed however to allow any subscriber the privilege of giving stock notes from time to time on account of his subscription, to be paid him in premiums, and all such sums so paid shall be in full, to the extent paid, of all liability on account of this subscription." *Held*, that the agreement created a contingent liability only upon the part of the subscribers; that the corporation stipulated by implication to issue policies to the subscribers and thereby to enable them to discharge the·*r* liability on these subscriptions; and that its inability, in consequence of insolvenc*v* to perform its part of the agreement, absolved the subscribers from liability thereon, either to the corporation or its creditors.

BILL IN EQUITY by two creditors, in behalf of all, under policies of insurance of the Commercial Mutual Marine Insurance Company, a corporation established at Boston by *Sts.* 1847, *c.* 149, and 1851, *c.* 1, against the corporation, its receiver, and the subscribers of the following agreement :

" Whereas the Commercial Mutual Marine Insurance Company is a corporation established by law, carrying on the business of marine insurance in the city of Boston, according to the principles of mutual insurance authorized by the statutes of the Commonwealth.

" And whereas, for the purpose of enabling the corporation to increase its business, and in order to give greater security to the holders of its policies, the directors have considered it expedient to obtain a subscription of not less than two hundred thousand dollars, to be paid in stock notes in advance of premiums, payable in twelve months from their date, and in such sums and at such times as may be decided upon by the directors.

" It is not proposed to make any assessment on this subscription at this time, nor unless the business of the office should require it, but retain it as a guaranty fund, on which, with its other assets, insurance could be based. It is proposed however to allow any subscriber the privilege of giving stock notes from time to time on account of his subcription, to be paid him in premiums, and all sums so paid shall be in full, to the extent paid, of all liability on account of this subscription.

" The time or period when the right to assess this subscription shall expire by its limitation shall be in five years from May 1st 1854, unless extended by the consent of the signers, and any

amount of subscription not then assessed at the termination of the period above named shall cease to be binding upon the signers thereof.

" The subscribers, members of the Commercial Mutual Marine Insurance Company of Boston, severally agree to pay the said company on demand the sums set opposite their respective names, or such parts thereof as may from time to time be called in for the use of the said company, the same to be payable either in money or promissory notes; provided the sum of two hundred thousand dollars is subscribed hereto. Boston, April 24th 1854."

The bill alleged that the corporation was insolvent at the date of this agreement ; that a receiver had since been appointed, but had received no assets ; that the subscriptions amounted to a greater sum than two hundred thousand dollars, were made for good and valuable considerations, and gave credit and confidence to the corporation, and enabled it to carry on its business of effecting insurances; that the corporation, with the knowledge and consent of the subscribers, advertised that it had a guaranty fund to the amount of two hundred thousand dollars and upwards; and that the subscribers thereto became bound to the corporation, and to the persons insured thereby, and who should suffer losses and thereby become creditors, to the amount of their respective subscriptions, except in so far as the same might be reduced in or by payment of premiums as therein provided. One of the subscribers demurred to the bill.

*A. H. Fiske & J. L. English*, for the defendant.

*C. B. Goodrich & F. C. Loring*, for the plaintiffs.

Bigelow, J. The contract set out in the bill, which the plaintiffs, in behalf of themselves and other creditors of the corporation, seek to enforce in this suit, derives no force or effect from any legislative sanction. It is conceded that, inasmuch as this corporation was chartered and had commenced business before the enactment of *Sts.* 1851, *c.* 281, and 1854, *c.* 453, the provisions of those acts, requiring a subscription payable in money or promissory notes as a guaranty fund or capital, do not apply to it. The contract is therefore to be regarded as one voluntarily entered into, and its validity and legal effect are to be deter-

mined by the ordinary rules applicable to the interpretation of contracts between parties at common law.

Considered in this light, taking the whole agreement together and giving full force and effect to all its parts, it amounted only to an agreement on the part of the subscribers to be assessed by the directors to the amount of their several subscriptions, in case the business of the company required it, with the right to give notes for such assessments " in advance of premiums " to the full amount subscribed. This right to assess was not absolute. It was expressly made contingent on the condition and state of business of the corporation, and was to be exercised only, both as to the time of assessment and the amount to be paid, by the directors of the corporation, according to their judgment and discretion. Nor was there any absolute agreement to pay money by the subscribers. Each had the right to obtain insurance from the company, and to pay the note given for the amount of the assessments on his subscription by premiums on policies. The agreement therefore created only a contingent liability, which could be discharged at the election of each subscriber, by procuring insurance with the corporation to an amount sufficient to absorb the note by premiums earned. The contract clearly imposed mutual obligations, which formed an essential part of the consideration of the promise of each party, and were dependent on each other. While the subscribers were liable for the amount subscribed by them respectively, according to the terms and in the manner prescribed by the contract, the corporation, on the other hand, was bound to perform its part of the agreement. The corporation stipulated by implication to issue policies to the subscribers, and thereby to enable them to discharge their liabilities, on their subscriptions or notes given therefor, by premiums due from them for insurance by the company. Therefore a failure or inability of the corporation to insure the property of the subscribers would constitute a substantial breach of the agreement. If the corporation could not allow a subscriber to discharge his liability in the mode pointed out in the contract, it certainly could not insist on the performance of its stipulations by him. The parties clearly

contemplated a continued ability on the part of the corporation to insure property in the usual course of business, and framed their agreement accordingly. It was never intended that the liability to pay should be enforced, when payment could no longer be made in the mode prescribed by the terms of the agreement. The agreement to pay the amount subscribed was dependent on the ability of the corporation to enter into valid contracts of insurance and to earn premiums by which the amounts due from the subscribers could be paid.

Such being the true interpretation of the contract, and the rights and obligations of the respective parties under it, it is very clear that this suit cannot be maintained. It appears by the allegations in the bill that the corporation is insolvent, unable to continue business, or make new contracts, and that all its effects are in the hands of a receiver, under a decree of this court, for the purpose of winding up and closing its affairs. The bill is in fact framed in behalf of all the creditors of the corporation on the actual and declared insolvency of the company and its inability to discharge the just claims due from it, and seeks a decree that the amount of the several subscriptions by the defendants shall be paid in money. But the creditors can claim no other or greater rights under the agreement set out in the bill than the corporation, and the corporation could not have required payment in money except for premiums earned or to be earned on insurance, if the subscribers were ready and willing to enter into contracts of insurance in discharge of these liabilities. The plaintiffs do not tender performance of the agreement. That has become impossible by the insolvency of the corporation. The defendants are therefore absolved from fulfilling their part of the agreement, which was dependent on the performance of the contract by the corporation.

In coming to this conclusion, we have been governed solely by the legal effect of the provisions of the contract, according to the proper interpretation of its terms, without any reference to the allegation in the bill that the company was insolvent before or soon after the signing of the agreement. There being no averment that this fact was known to the defendants, and no

allegation of fraud or collusion by them, or any of them, their rights must depend solely on the proper construction to be given to the terms of the agreement to which they in good faith became parties.

Nor have we considered the question whether the defendants could be held liable under these contracts, except to the payment of assessments on the amount of their subscriptions, "in such sums and at such times as may be decided by the directors." The view we have taken of the stipulations of the contract renders an opinion on this question unnecessary.

Of course this decision can have no bearing upon agreements or contracts of subscription made in pursuance of *St.* 1851, *c.* 281, or of other statutes subsequently enacted.

*Demurrer sustained; bill dismissed.*